# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISON

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff,<br><br>    v.<br><br>WANTONG INTERNATIONAL, INC. d/b/a HEALTHY BODY MASSAGE AND SPA, INTERNATIONAL STUDENT SERVICES, LLC, PRO-NAILS & BEAUTY SCHOOL INC., ZONGYING YUAN, and WENXIN LIU,<br><br>    Defendants. | **CASE NO.** 6:25-cv-00179<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This is a civil action for damages under the federal Trafficking Victims' Protection Reauthorization Act ("TVPRA"), 18 U.S.C.§§ 1595 arising out of Defendants' conduct. Plaintiff respectfully submits her Complaint for damages and makes the following averments.

## JURISDICTION AND VENUE

2. This Court has federal question subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, because Plaintiff brings this action under 18 U.S.C. § 1595.

3. Plaintiff's claims arise out of the same series of transactions or occurrences and share common questions of law or fact. The essential facts of Plaintiff's claims are so logically connected that considerations of judicial economy

and fairness dictate that all the issues be resolved in a single lawsuit.

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1361 because all of the events or omissions giving rise to the claims asserted in this action, including the Defendant's misconduct and omissions, occurred in the Middle District of Florida.

## THE PARTIES

A. **Plaintiff**

5.     Plaintiff JANE DOE is a Chinese citizen that has resided in Orange County, Florida since 2014 and is *sui juris*.

6.     JANE DOE was a victim of sex trafficking. JANE DOE fears retaliation from both her former traffickers, as well as her former "clients" that contributed to her victimization in the Central Florida community.

7.     Chinese upbringing and culture surround this type of victimization with great shame that dishonors both the victim and their family. JANE DOE fears personal humiliation and fears causing shame to fall on both herself and her family if her identity were to be known.

8.     JANE DOE was victimized in a way that violates her utmost privacy.

9.     JANE DOE'S safety, right to privacy, and personal security outweigh the public interest in knowing her identification.

10.    It is in the public's interest to give anonymity to trafficking survivors so that other victims will feel the ability to come forward and not be fearful that their identity will be publicized.

11.    JANE DOE'S legitimate concerns for privacy outweigh any prejudice to

Defendants or the public by allowing Plaintiff to proceed pseudonymously.

B. **Defendants**

12. Defendant Zongying Yuan, a/k/a Jenny Yuan (hereinafter "Jenny"), is a resident of the State of Florida and is *sui juris*. Upon information and belief, she is a U.S. citizen; alternatively she is a permanent resident.

13. Defendant Wenxin Liu, a/k/a Michael Yuan (hereinafter "Michael"), is a resident of the State of Florida and is *sui juris*. Upon information and belief, he is a U.S. citizen; alternatively he is a permanent resident.

14. Defendant Wantong International Inc. was a Florida Corporation with its principal place of business in Ocoee, Florida. At all relevant times to this Complaint, Wantong International Inc. was doing business as the Healthy Body Massage and Spa, located at 9446 West Colonial Drive, Ocoee, FL 34761 (hereinafter "Healthy Body").

15. Defendant International Student Services, LLC was a Florida Corporation with its principal place of business located at 1695 Lee Road, Apt. A-215, Winter Park, FL 32789 (hereinafter "Int'l Student Services").

16. Defendant Pro-Nails & Beauty School Inc., is a Florida Corporation with its principal place of business located at 11631 East Colonial Drive, Orlando, FL 32817 (hereinafter "Beauty School").

## FACTUAL ALLEGATIONS

A. **The Immigration Fraud Scheme in China**

17. JANE DOE was raised by her parents in China.

18. Her parents both worked hard to support her and their family financially.

19. In China, a family must have wealth, a strong family background, and good connections to be considered "successful."

20. JANE DOE's family did not have these things. JANE DOE was raised by her parents, who struggled to provide for their daughter, and to give her an education. With little hope of acquiring sufficient economic and social status in China, JANE DOE dreamt of securing a better life and economic success in the United States to provide for herself and her family.

21. In China, JANE DOE's mother went to Int'l Student Services to attempt to get JANE DOE an American education.

22. Int'l Student Services represented and promised that in exchange for a sum of money, they would help JANE DOE obtain an F-1 student visa which would enable JANE DOE to lawfully enter the United States, work in the United States,[1] and she could attend school to become educated and literate in the English language.

23. Due to her family's financial position, Int'l Student Services agreed to allow JANE DOE's family to pay a portion of the payment, and then required JANE DOE to pay the remainder once she arrived in the U.S. and could begin working.

24. To obtain an F-1 student visa, the immigrant student is not permitted to work in the United States and therefore must show enough money in their bank

---

[1] Int'l Student Services lied about this fact to JANE DOE. A student present in the U.S. on an F-1 visa is there to study and generally is not permitted to work in the U.S.

account to meet their cost of living.

25. Unbeknownst to JANE DOE, Int'l Student Services presented fraudulent materials to represent that JANE DOE had the requisite money to cover her cost of living.

26. JANE DOE and her mother did not know anything about American immigration and trusted this company was being truthful and operating lawfully.

B. The Immigration Fraud Scheme in the United States

27. JANE DOE obtained the F-1 student visa and entered into the United States on April 14, 2014.

28. JANE DOE had been told by Int'l Student Services that she would be picked up from the Orlando Airport and living arrangements would be handled by their American based employees – Michael and Jenny.

29. Michael picked up JANE DOE from the airport.

30. Before leaving China, JANE DOE had been told by Int'l Student Services that her room and board would be provided.

31. Once she was in America, JANE DOE was told by Michael and Jenny that she would be charged for her transportation from the airport and for her living accommodations.

32. JANE DOE was taken to an apartment in Winter Park, FL that was operated by Jenny and was the principal address for Int'l Student Services.

33. JANE DOE began attending a university in Orlando, FL.

34. JANE DOE found out that she was not allowed to work in the U.S. while

present on an F-1 student visa.

35. JANE DOE confronted Michael and Jenny about not being able to work since this was different than what Jenny and/or Int'l Student Services told JANE DOE while in China.

36. Michael and Jenny offered JANE DOE that they could help her apply to be able to get work authorization by applying for a green card through a process called asylum.

37. JANE DOE was told that she could either hire their immigration lawyer to file the paperwork for a large sum of money, or she could pay Michael's sister, "Jackie", $1500 to do the paperwork.

38. JANE DOE had no resources, did not speak the language, and had no financial ability to do anything other than hire Jackie.

39. Michael and Jenny caused JANE DOE to be indebted to them – they told her she owed them for her Visa, travel to the U.S., transportation in the U.S., her apartment rent, her living expenses, her schooling, and now her immigration paperwork to obtain asylum.

40. JANE DOE was also isolated by Michael and Jenny – they purposefully kept her away from other Chinese people so she had no one else she could ask for help that could understand her.

41. Jackie was not a lawyer but was preparing immigration applications for asylum for the immigrants that came to the U.S. through Int'l Student Services, to include JANE DOE.

42. JANE DOE paid Jackie $1500 and Jackie prepared her asylum application

paperwork.

43. As part of an asylum claim, an applicant is granted work authorization.

44. In September 2014, Jackie submitted JANE DOE's asylum application.

45. On October 4, 2014, the U.S. Citizenship and Immigration Services received the immigration application for asylum. JANE DOE was granted work authorization shortly thereafter.

46. JANE DOE did not have any money to afford tuition so she dropped out of Everest University after the first semester.

47. The trap had sprung – Michael told JANE DOE that she had to get a massage license and once she got it, he would give her a job at his family's spa to work in.

48. Additionally, now that her F-1 student visa was no longer valid, her asylum claim was the only thing allowing her to legally remain in the United States.

C. The Massage License Fraud Scheme

49. Michael told JANE DOE that she had to enroll in school to obtain her license to do massage therapy.

50. Michael and Jenny did not give JANE DOE a choice but required her to go to the Pro Nails & Beauty School.

51. JANE DOE was required to attend a small portion of the classes.

52. Pro Nails & Beauty School forged the remainder of her class hours and then certified she had completed the requisite 550 hours of coursework.

53. On November 19, 2015, JANE DOE received a fraudulent diploma from Pro Nails & Beauty School, which was used to obtain her massage license.

54. JANE DOE was threatened with deportation, family shame, and criminal charges for her and her parents back in China if she did not obey them or if she caused any issues with the fraudulent license.

55. In 2015, once she had her license, Michael and Jenny put JANE DOE to work in their family-owned spas – Herbal Spa and Healthy Body.

### D. The Sex Trafficking of JANE DOE

56. JANE DOE began "dating" Michael.[2]

57. Michael changed her identity under the pretext that she needed an "American name." Michael began calling her a new "American" name.

58. JANE DOE worked at Herbal Spa for a few weeks.

59. Jackie was the owner of Herbal Spa. Jenny acted as the manager.

60. Shortly after, Healthy Body became incorporated on or about November 17, 2015.

61. Healthy Body officially opened its doors to customers in or about June of 2016.

62. Healthy Body was considered to be "Michael's spa" because he was the family member acting as the manager.

63. Jenny was the owner of Healthy Body.

64. JANE DOE was moved to Healthy Body as a massage therapist.

65. JANE DOE primarily worked at Healthy Body but sometimes would be

---

[2] A victim cannot be in a true relationship with their trafficker, as the "relationship" is based on coercion.

brought back to Herbal Spa when they needed the help.

66. Many of the clients at Healthy Body and Herbal Spa were seeking massages that included sexual acts.

67. Healthy Body advertised that they offered "Luxury Asian Massage." This phrasing is known amongst consumers of illicit massages to mean that the massage will include sex acts.

68. Many of the customers at the Healthy Body came to this specific spa because they expected to receive sex acts as part of the massage.

69. Michael required JANE DOE to "keep the customers happy" and perform whatever sexual service they requested.

70. JANE DOE was required to undress if requested by a client and expose her own body.

71. JANE DOE was required to perform sexual acts with clients, to include but not limited to providing a customer with a "happy ending", meaning JANE DOE was required to stimulate the male customer's penis with her hand or mouth.

72. On one or more occasion, JANE DOE was sexually assaulted and/or raped by clients at Healthy Body. In each situation, the male customer touched JANE DOE's breasts or vagina without her consent and against her will with either his hand or penis.

73. After each sexual encounter in the massage room, the client would pay Healthy Body for the massage and the sex act(s).

74. JANE DOE attempted to stop this by telling Michael about the sex acts after each occurrence and asking Michael to make it stop and to ban the customer.

75. When these sexual acts were reported to Michael, he refused to ban the customer and instead, would call the customer, claim that JANE DOE wished to see them again, offered coupons, and invited the customer back. With each invitation to return to the spa, Michael knew that this customer would be seeking sex acts from JANE DOE and he used coercion to require JANE DOE to perform sex acts for his financial benefit.

76. On one or more occasions, Michael witnessed a sex act occurring in one of the massage rooms that JANE DOE was in but took no steps to stop the act or protect JANE DOE, despite knowing she was unwilling and acting under coercion.

77. Healthy Body received payment for this sexual encounter.

78. The sex acts became more and more frequent until they occurred daily.

79. Michael and Jenny would threaten JANE DOE to ensure she acquiesced to their demands that she engage in sexual acts with the customers and told her that if she did not continue to comply and do what she was told, they would report her to immigration and have her deported. This threat happened daily or almost daily.

80. When possible, JANE DOE sent money back to her parents in China.

81. Michael told JANE DOE that the money she had sent back to her parents was money laundering and she had committed a crime that could send her to jail/prison.

82. Michael threatened JANE DOE that if she did not acquiesce to their demands, he would report her to the police for money laundering.

83. JANE DOE did not know the law, had no one she could ask, and was afraid of being deported and/or incarceration.

84. Michael and Jenny controlled both her immigration paperwork as well as her

massage license. Michael refused to give her any information about the immigration process and she was required to "trust him" to provide her with information.

85. Michael claimed that he was her "boyfriend" and told her that they were dating so that she felt loyalty to him.

86. Michael would monitor JANE DOE's email, phone, and social media to ensure she was not communicating with anyone he did not approve of (and could help her escape or tell her the truth).

87. Michael always claimed that Jackie, his sister, had helped JANE DOE with her immigration paperwork, so she "owed" him.

88. JANE DOE was required to work more than 12 hours per day, seven days a week.

89. JANE DOE was frequently not paid her earnings and would sometimes go months at a time without being paid.

90. This made her financially dependent on Michael and Jenny.

91. Sometimes, the clients would leave a tip:

   a. If the tip was paid on a card to Healthy Body, the tip was kept by Healthy Body and never given to JANE DOE.

   b. If the tip was paid in cash to JANE DOE, she was temporarily allowed to keep the tip until Michael later took it from her.

92. When JANE DOE did receive a paycheck, Michael would take her to the bank to deposit her check but would then require her to withdraw the money from the ATM in cash and pay it in whole or in part back to Michael.

93. In or about 2019, JANE DOE eventually asked a client for help and was able to escape Defendants.

## CAUSES OF ACTION

### COUNT 1

**VIOLATION OF THE TVPRA - BENEFICIARY LIABILITY**
**18 U.S.C. §§ 1591 (a)(1) and 1595(a)**
*Plaintiff v. Wantong Int'l Inc. d/b/a Healthy Body Massage & Spa*

94. Plaintiff JANE DOE realleges and incorporates by reference paragraphs 1-95 as if fully incorporated herein.

95. Defendant WANTONG INTERNATIONAL, INC. d/b/a HEALTHY BODY MASSAGE AND SPA had Michael and Jenny acting as owners, operators, agents, employees, or servants of Healthy Body.

96. Defendant Healthy Body knowingly used the instrumentalities and channels of interstate and foreign commerce to facilitate violations of 18 U.S.C. §§ 1591(a)(1) and 1595(a), occurring within the territorial jurisdiction of the United States.

97. Healthy Body's conduct was in or affected by interstate and/or foreign commerce.

98. JANE DOE was over the age of 18 for all relevant time periods pertinent to this lawsuit.

99. Defendant Healthy Body, by and through its agents, owners, and/or employees recruited, enticed, harbored, obtained, advertised, maintained, patronized and/or solicited JANE DOE to engage in commercial sex acts.

100. Defendant Healthy Body knew or was in reckless disregard of the fact

that means of fraud, coercion, or a combination of the two would be used to cause JANE DOE to engage in commercial sex acts, to include:

    a. a scheme, plan, or pattern that was created to cause JANE DOE to believe that if she failed to engage in commercial sex acts, she would suffer physical, psychological, financial, or reputational harm; and/or

    b. a threat to abuse the law or legal process to have JANE DOE deported or prosecuted.

101. Defendant Healthy Body knowingly benefitted, or should have known that it was benefiting, from assisting, supporting, or facilitating a violation of 18 U.S.C. s. 1591(a)(1).

102. Defendant Healthy Body knowingly benefitted, or attempted or conspired to benefit, by receiving financial compensation and/or something of value for its participation in the venture.

103. Defendant Healthy Body's conduct has caused JANE DOE serious harm including, without limitation, physical, psychological, financial, and reputational harm.

## COUNT 2

**VIOLATION OF THE TVPRA - BENEFICIARY LIABILITY**
**18 U.S.C. §§ 1591 (a)(1) and 1595(a)**
*Plaintiff v. Int'l Student Services, LLC*

104. Plaintiff JANE DOE realleges and incorporates by reference paragraphs 1-95 as if fully incorporated herein.

105. Defendant INTERNATIONAL STUDENT SERVICES, LLC had

Michael, Jackie, and Jenny acting as owners, operators, agents, employees, or servants of Int'l Student Services.

106. Defendant Int'l Student Services knowingly used the instrumentalities and channels of interstate and foreign commerce to facilitate violations of 18 U.S.C. §§ 1591(a)(1) and 1595(a), occurring within the territorial jurisdiction of the United States.

107. Int'l Student Services' conduct was in or affected by interstate and/or foreign commerce.

108. JANE DOE was over the age of 18 for all relevant time periods pertinent to this lawsuit.

109. Defendant Int'l Student Services, by and through its agents, owners, and/or employees recruited, enticed, obtained, maintained, patronized and/or solicited JANE DOE to travel to the United States to engage in commercial sex acts at their illicit massage parlor(s), to include Healthy Body.

110. Defendant Int'l Student Services knew or was in reckless disregard of the fact that means of fraud, coercion, or a combination of the two would be used to cause JANE DOE to engage in commercial sex acts, to include:

    a. a scheme, plan, or pattern that was created to cause JANE DOE to believe that if she failed to engage in commercial sex acts, she would suffer physical, psychological, financial, or reputational harm; and/or

    b. a threat to abuse the law or legal process to have JANE DOE deported or prosecuted.

111. Defendant Int'l Student Services knowingly benefitted, or should have known that it was benefiting, from assisting, supporting, or facilitating a violation of 18 U.S.C. s. 1591(a)(1).

112. Defendant Int'l Student Services knowingly benefitted, or attempted or conspired to benefit, by receiving financial compensation and/or something of value for its participation in the venture.

113. Defendant Int'l Student Services' conduct has caused JANE DOE serious harm including, without limitation, physical, psychological, financial, and reputational harm.

### COUNT 3

**VIOLATION OF THE TVPRA - BENEFICIARY LIABILITY**
**18 U.S.C. §§ 1591 (a)(1) and 1595(a)**
*Plaintiff v. Pro-Nails & Beauty School, Inc.*

114. Plaintiff JANE DOE realleges and incorporates by reference paragraphs 1-95 as if fully incorporated herein.

115. Defendant PRO-NAILS & BEAUTY SCHOOL, INC. conspired with Michael and Jenny.

116. Defendant Beauty School knowingly used the instrumentalities and channels of interstate and foreign commerce to facilitate violations of 18 U.S.C. §§ 1591(a)(1) and 1595(a), occurring within the territorial jurisdiction of the United States.

117. Beauty School's conduct was in or affected by interstate and/or foreign commerce.

118. JANE DOE was over the age of 18 for all relevant time periods pertinent

to this lawsuit.

119. Defendant Beauty School, by and through its agents, owners, and/or employees provided, obtained, or maintained, JANE DOE.

120. Defendant Beauty School knew or was in reckless disregard of the fact that means of fraud, coercion, or a combination of the two would be used to cause JANE DOE to engage in commercial sex acts, to include:

- a. a scheme, plan, or pattern that was created to cause JANE DOE to believe that if she failed to engage in commercial sex acts, she would suffer physical, psychological, financial, or reputational harm; and/or
- b. a threat to abuse the law or legal process to have JANE DOE deported or prosecuted.

121. Defendant Beauty School knowingly benefitted, or should have known that it was benefiting, from assisting, supporting, or facilitating a violation of 18 U.S.C. s. 1591(a)(1).

122. Defendant Beauty School knowingly benefitted, or attempted or conspired to benefit, by receiving financial compensation and/or something of value for its participation in the venture.

123. Defendant Beauty School's conduct has caused JANE DOE serious harm including, without limitation, physical, psychological, financial, and reputational harm.

## COUNT 4

**VIOLATION OF THE TVPRA - DIRECT LIABILITY**

## 18 U.S.C. §§ 1591 (a)(1) and 1595(a)
### *Plaintiff v. Wenxin Liu a/k/a "Michael"*

124. Plaintiff JANE DOE realleges and incorporates by reference paragraphs 1-95 as if fully incorporated herein.

125. Defendant WENXIN LIU a/k/a "Michael" knowingly used the instrumentalities and channels of interstate and foreign commerce to facilitate violations of 18 U.S.C. §§ 1591(a)(1) and 1595(a), occurring within the territorial jurisdiction of the United States.

126. Defendant Michael's conduct was in or affected by interstate and/or foreign commerce.

127. JANE DOE was over the age of 18 for all relevant time periods pertinent to this lawsuit.

128. Defendant Michael recruited, enticed, harbored, obtained, advertised, maintained, patronized and/or solicited JANE DOE.

129. Defendant Michael also conspired with Defendants Jenny, Healthy Body, Int'l Student Services, and/or Beauty School to recruit, entice, harbor, obtain, advertise, maintain, patronize and/or solicit JANE DOE.

130. Defendant Michael knew or was in reckless disregard of the fact that means of fraud, coercion, or a combination of the two would be used to cause JANE DOE to engage in commercial sex acts.

131. Defendant Michael knowingly benefitted, or should have known that he was benefiting from assisting, supporting, or facilitating a violation of 18 U.S.C. s.

1591(a)(1).

132. Defendant Michael knowingly benefitted, or attempted or conspired to benefit, by receiving financial compensation and/or something of value for its participation in the venture.

133. Defendant Michael's conduct has caused JANE DOE serious harm including, without limitation, physical, psychological, financial, and reputational harm.

**COUNT 5**

**VIOLATION OF THE TVPRA - DIRECT LIABILITY**
**18 U.S.C. §§ 1591 (a)(1) and 1595(a)**
*Plaintiff v. Zongying Yuan a/k/a "Jenny"*

134. Plaintiff JANE DOE realleges and incorporates by reference paragraphs 1-95 as if fully incorporated herein.

135. Defendant ZONGYING YUAN a/k/a "Jenny" knowingly used the instrumentalities and channels of interstate and foreign commerce to facilitate violations of 18 U.S.C. §§ 1591(a)(1) and 1595(a), occurring within the territorial jurisdiction of the United States.

136. Defendant Jenny's conduct was in or affected by interstate and/or foreign commerce.

137. JANE DOE was over the age of 18 for all relevant time periods pertinent to this lawsuit.

138. Defendant Jenny recruited, enticed, harbored, obtained, advertised, maintained, patronized and/or solicited JANE DOE.

139. Defendant Jenny also conspired with Defendants Michael, Healthy Body, Int'l Student Services, and/or Beauty School to recruit, entice, harbor, obtain, advertise, maintain, patronize and/or solicit JANE DOE.

140. Defendant Jenny knew or was in reckless disregard of the fact that means of fraud, coercion, or a combination of the two would be used to cause JANE DOE to engage in commercial sex acts.

141. Defendant Jenny knowingly benefitted, or should have known that he was benefiting from assisting, supporting, or facilitating a violation of 18 U.S.C. s. 1591(a)(1).

142. Defendant Jenny knowingly benefitted, or attempted or conspired to benefit, by receiving financial compensation and/or something of value for its participation in the venture.

143. Defendant Jenny's conduct has caused JANE DOE serious harm including, without limitation, physical, psychological, financial, and reputational harm.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff demands judgment against all the Defendants on each of the above-referenced claims and counts and as follows:

   a. That the Court award Plaintiff compensatory, consequential, general, and nominal damages in an amount to be determined at trial.

   b. That the Court award punitive or exemplary damages against Defendants Michael and Jenny in an amount to be determined at trial.

c. That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs and expenses.

d. That the Court award pre- and post-judgment interest at the maximum legal rate; and

e. That the Court grand all such other relief as it deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

DATED: February 3, 2025

*/s/ Lisa D. Haba*
Lisa D. Haba (FBN 077535)
THE HABA LAW FIRM, P.A.
1220 Commerce Park Dr., Suite 207
Longwood, FL 32779
(844) 422-2529
lisahaba@habalaw.com